Eastern District of Kentucky
F I L E D
MAY 3 1 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-426-GWU

GARY MCFERRON,                                                 PLAINTIFF,

VS.                 **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,             DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

1

McFerron

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

One of the steps of the analysis, the severity regulation, has been held to be a <u>de minimus</u> hurdle in the disability determination process. <u>Murphy v. Secretary of Health and Human Services</u>, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." <u>Farris v. Secretary of Health and Human Services</u>, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." <u>Id</u>., n.1.

## DISCUSSION

The administrative law judge (ALJ) found that McFerron suffered from "severe" obesity, restrictive airway disease, mild degenerative disc disease of the lumbar spine with low back pain, and a learning disorder. (Tr. 19).[1] While the plaintiff was limited to a restricted range of medium level work and, therefore, could not return to his past work (Tr. 21, 23), the ALJ believed that he could perform a significant number of jobs in the economy based on the testimony of a vocational expert (VE) (Tr. 24). Thus, the applications for benefits were denied. (Tr. 25).

---

[1] He found that the plaintiff's hypertension was not a "severe" impairment since there was no evidence that this condition independently compromised McFerron's ability to perform work activities, and also that his treating physician had noted that the condition was poorly controlled due to the plaintiff's non-compliance with medication.

2

The plaintiff alleged that he was disabled beginning in July, 2002 (Tr. 50, 60) due to problems with breathing, high blood pressure, chest pains, obesity, back problems, difficulty learning and depression (e.g., Tr. 60, 79, 82, 83, 96, 99, 113).

The plaintiff's treating physician, Karen Saylor, ordered a stress test in April, 2002, shortly before the disability onset date, after an emergency room visit for complaints of chest pain radiating to the arm. (Tr. 119, 123). The results indicated that the symptomatology was compatible with coronary artery disease, but that the test had shown no perfusion evidence of hemodynamically significant coronary disease. (Tr. 120). A chest x-ray done at the hospital had shown no acute cardiopulmonary diease (Tr. 127) and a standard EKG had been unremarkable (Tr. 128).

These records were reviewed by an agency medical reviewer who completed a residual functional capacity assessment form, indicating that the plaintiff was capable of medium level work with only environmental restrictions on concentrated exposure to temperature extremes, fumes, odors, gases, and poor ventilation. (Tr. 135-142). At that point in the record, no opinions from treating physicians were yet present. (Tr. 142B).

Dr. Saylor's progress notes and other associated material were then introduced as Exhibit 5; the the undersigned's overall impression of these notes, however, is that while they provide evidence of shortness of breath and back pain, to a degree, the impetus for any disability statement appears to have come from the

3

plaintiff himself. A late July, 2002 progress note indicates that the plaintiff was complaining of shortness of breath of two days' duration, but that in the past he had not "really had any asthma or breathing difficulties." (Tr. 174). When next seen, approximately a month later, it was noted that "patient presents today wanting a statement for disability" and noting that "his boss has laid him off and does not intend to call him back to work." (Tr. 172.). The physical examination showed rhonchi in the lung bases and wheezes; Saylor indicated that, while she was diagnosing bronchitis and telling the plaintiff to avoid heat, she did not feel that she could write a disability statement "at this time because he has only been ill for one week." (Id.) On a March, 2003 office visit, the patient apparently mentioned that he had strained his back lifting something heavy the previous week and that he was having shortness of breath when he walked; he also indicated to the doctor's nurse that he wanted to sign up for disability. (Tr. 169). Saylor noted that while the plaintiff was morbidly obese and needed weight loss, his lungs were clear and lumbar spine x-rays had been negative. (Tr. 170, 171).[2] A notation on the results of spirometric testing indicated that the plaintiff had moderate restrictive lung disease, probably based on obesity. (Tr. 176). The plaintiff was again seen by the doctor in May, 2003 when he complained of shortness of breath and "wanting to sign up on his disability due to the fact that he had lost his job due to the fact that he is longer able to

---

[2]The radiologist's report indicated that there was evidence of mild degenerative disc disease with associated muscle spasm. (Tr. 171).

4

perform his job due to his inability to breathe okay due to his obesity." (Tr. 168A). It was observed that the patient was obese and had some labored respirations with faint expiratory wheezing; gait, balance, heart rate, and reflexes were normal, however. (Id.) Saylor diagnosed obesity as well as restrictive airway disease "probably secondary to his weight"; she noted that he could "go to the Social Security office and talk to them about his disability but that he would probably not qualify at this time." (Id.) In January, 2004, the doctor had seen the patient who reported that he had "signed up [for] disability." (Tr. 167). The plaintiff's heart rate was regular and his blood pressure was 140/86. (Id.) Saylor felt that McFerron should lose 20 pounds, as his weight measured at 280 pounds. (Id.) The doctor noted that she heard occasional crackles in the lungs and diagnosed restrictive airway disease, for which the plaintiff should avoid smoke and dust. (Id.) She noted that while his vision was 20/20, his night vision complaints should be evaluated by another doctor. (Id.) Thus, the defendant's point that Saylor's progress notes would justify only environmental restrictions is well taken.

At this point, the record was reviewed by a medical reviewer. Again, a medium level work capacity with environmental restrictions with regard to temperature extremes, fumes, odors, dusts, gases and poor ventilation was noted. (Tr. 178-183).

Records from the Kentucky Clinic's Pulmonary Clinic, to whom Saylor had apparently referred the patient (Tr. 189, 191), were introduced. A diagnosis of

mixed obstructive and restrictive lung disease was made in August, 2004. In 2005, the plaintiff's asthma was noted to be moderate and the evaluating physician, Michael Anstead, recommended a need to avoid exposure to dust, smoke and pet dander. (Tr. 191). Thus, the records from this source do not suggest restrictions necessarily greater than the ALJ's.

Thereafter, another progress note from Karen Saylor was introduced. She had apparently seen the plaintiff again in March, 2004, when he complained of back pain and, once again, wanted to talk to the doctor about disability. (Tr. 192). The plaintiff's weight was record as 275 pounds and his blood pressure at 150/96; some tenderness in the back was observed. (Id.). Yet the heart rate was regular, the lungs were clear, reflexes were unremarkable and straight leg raising was negative. (Id.)

The next exhibit which appears in the record is a form completed by Dr. Saylor, apparently in January, 2005. (Tr. 193). The form indicates that the plaintiff has a number of significant restrictions such as an inability to stand/walk total for more than two hours, an inability to lift more than 20 pounds occasionally, and total restrictions on certain environmental factors. (Id.). However, on the form, the doctor did not refer to diagnoses, clinical examination information, x-rays or objective testing of any kind and, as noted previously, her progress notes already submitted did not support a severity of conditions. Accordingly, in this particular instance, the ALJ had good reasons to reject this form assessment of the treating source, in favor of opinions offered by other sources in the record.

McFerron

The plaintiff also argues that the defendant did not consider McFerron's pain or combination of impairments properly, but these arguments are rejected for the reasons stated in the defendant's brief at pp. 12-14.

The plaintiff's mental and educational abilities must also be examined.

His treating physician had not emphasized any ongoing mental or emotional problems, and the only psychological evaluation of record indicated that his IQ scores were not reflective of his mental ability and that he had been assigned a GAF score of 61-70. (Tr. 146-147).[3] Records from the Rockcastle County School system seem to indicate that the plaintiff failed several grades, and do not expressly indicate that he attained any grade higher than the seventh (Tr. 114); at the same time, they do not indicate that the plaintiff was assigned to special education classes, sent for psychological evaluation, or scored at a certain level on achievement or IQ testing. The plaintiff himself has not emphasized WRAT results, nor has he stressed the mental restrictions noted in the hypothetical question.

Given the unique circumstances of this case, and arguments of the plaintiff, the decision will be affirmed.

This the ___31___ day of May, 2006.

*[signature]*
G. WIX UNTHANK
SENIOR JUDGE

---

[3]GAF ratings between 61 and 70 are consistent with "some mild symptoms . . . but generally functioning pretty well" as per the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.) (DSM-IV).

7